## DANIEL BACON *vs.* JOHN W. LINCOLN.

A judgment being rendered for a certain sum, which was minuted on the writ, and an entry thereof made on the clerk's docket, execution issued thereon accordingly; the record being subsequently extended, the judgment was stated therein, by mistake, to be for a different sum; and, on the fact being made to appear, by the petition of the judgment creditor, the court directed an amendment of the record.

Where the assignee of an insolvent debtor, against whom a suit is pending, on which an attachment of the debtor's property has been made, is authorized by the court, in pursuance of the statute of 1841, *c.* 124, § 5, to proceed with the suit to final judgment and execution, the proceedings are to be conducted, and the judgment rendered and execution thereon issued, in the name of the assignee, as such; and, upon being so authorized, the assignee takes the attaching creditor's place, with all the remedies and securities, and the benefit of all official liabilities, respecting the attached property, to which the creditor would otherwise be entitled.

An assignee, who is authorized under the statute of 1841, *c.* 124, § 5, to prosecute a suit commenced by a creditor against the insolvent, and who prosecutes the same to final judgment and execution, is entitled to recover the costs of the suit, and will hold the same subject to the claim of the original plaintiff, for the amount thereof disbursed by him, and to the claim of such plaintiff's attorney for the amount of his lien thereon.

A deputy sheriff, who attaches personal property on mesne process, and takes a receipt therefor, and leaves the property in the possession of the receiptor, by whom it is delivered to the owner, who converts it to his own use, is estopped by his return of such attachment, when called upon to seize and sell the property on the execution, to deny that the property is in his hands, both as against the original attaching creditor, and as against the assignee of the debtor, admitted to prosecute the suit under the statute of 1841, *c.* 124, § 5.

Where the assignee of an insolvent debtor, being authorized under the statute of 1841, *c.* 124, § 5, to prosecute a suit against the debtor, in which the debtor's property has been attached, prosecutes the suit to judgment and takes out execution thereon in his own name as assignee, it is the business of the officer by whom the writ was served to ascertain from the record, that the suit is the same in which the attachment was made.

THIS was an action on the case, against the defendant, as sheriff of the county of Worcester, for the neglect of one of his deputies, Cephas Willard, in not satisfying an execution in his hands out of property previously attached by him on mesne process, and for not returning the execution.

The case was submitted to the court upon an agreed statement of facts, as follows: —

Francis Twichell, jr., on the 19th of August, 1843, ˀrought

an action of debt for rent against Edmund H. Houghton, and caused his writ to be served, on the 21st, by the deputy above mentioned. The service was made by an attachment of two hundred calfskins, which were in Houghton's shop, and were pointed out by him to the officer, but were not removed. Houghton procured a receiptor, whose receipt for the skins was taken by the officer, and the skins were thereupon suffered to remain in Houghton's possession. The skins were soon after sold by Houghton, by whom the proceeds were converted to his own use ; being appropriated to the payment of previously existing debts, and to the buying of new stock for carrying on his business as a tanner.

In January, 1846, — Twichell's action having been entered in court and continued from term to term, but judgment not having been rendered therein, — Houghton took the benefit of the insolvent law, and the plaintiff was duly chosen his assignee.

The assignee petitioned the master that the attachment should not be dissolved, and the master thereupon passed an order to that effect, agreeably to the provisions of the act of 1841, *c.* 124, § 5. The assignee then petitioned the court of common pleas, in which the suit was pending, for leave to prosecute the same, according to the statute ; and leave being granted accordingly, the assignee carried forward the suit, until the August term, 1846, when judgment was rendered for him, in his own name, as assignee.

On this judgment, execution issued for the sum of one hundred and *twelve* dollars and seventy-three cents, debt, and fifty-eight dollars and thirty-five cents, costs. But in the record of the judgment, which was subsequently made up, the same was stated to be for the sum of one hundred and *twenty-two* dollars and seventy-three cents, debt, and fifty-eight dollars and thirty-five cents, costs. At the December term, 1847, the plaintiff presented a petition to the court, for an amendment of the record ; and it appearing to the court that the facts were correctly set forth in the petition, the

11 *

prayer thereof was allowed, and the amendment was ordered accordingly.*

The plaintiff committed his execution, within thirty days after the judgment was recovered, to Willard, the deputy by whom the writ was served, with a written notice that the execution issued on a judgment in the action commenced by Twichell, on which the officer had made an attachment as above mentioned, and with directions to satisfy the execution out of the property so attached. Willard returned the execution unsatisfied, on the 23d of January, 1847.

At the time of Houghton's insolvency, he was possessed of personal property of nearly the amount of $1000, and at the time of the attachment, of a much larger amount. The skins were sufficient to have satisfied the judgment.

*W. A. Bryant*, for the plaintiff.

*N. Wood*, and *J. Weed*, for the defendant.

SHAW, C. J. This is an interesting and important question, because, as we believe, it is the first case which has come before this court, involving a construction of one of the most important provisions of the insolvent laws. It is a suit against the sheriff for the default of one of his deputies, in not having produced, on demand, within thirty days after judgment, personal property previously attached by him on mesne process, to which property, the plaintiff alleges, he was by law entitled.

The plaintiff is the assignee of Edmund H. Houghton, an insolvent debtor. The facts in the case are, that prior to the commencement of the proceedings in insolvency, one Francis Twichell commenced an action of debt against Houghton,

---

* The plaintiff, in his petition, represented, " that at the August term of this court, in the year 1846, he recovered judgment against said Edmund H. Houghton, for the sum of $112·73, debt, and $58·35, costs of said suit, and that said sums appear as the minute of judgment upon the writ, upon the docket, and by other satisfactory evidence, and execution was issued for the same sums. But in making up the record, which now remains in court, the said debt was by mistake entered as one hundred and twenty-two dollars and seventy-three cents, and costs as above."

for rent, on which the property in question was attached; that the insolvency took place, whilst this suit was pending, under which Bacon, the plaintiff, was chosen assignee; that Bacon petitioned the court before which the suit was pending, to be allowed to come in and prosecute the suit, in order to preserve the attachment, for the benefit of the general creditors, pursuant to the statute of 1841, *c.* 124, § 5. This he was allowed to do, and he prosecuted the suit to judgment, and took out execution thereon in his own name.

There was an error in making up the judgment of the court of common pleas, which, by the order of that court, was afterwards permitted to be amended ; and some question was made as to the regularity of the proceeding; but it appears to us, that the allowance of the amendment was within the power of the court and was right.

Demand was made by the plaintiff on the attaching officer, within thirty days after judgment, for the property, but it was not delivered. It appears by the facts agreed, that the attached property, soon after the attachment, was receipted for, and by the receiptor delivered back to the debtor.

Several objections are taken to the regularity of the judgment and course of proceeding in the suit against Houghton, and to the plaintiff's right to maintain the present action. Whether these objections are valid depends upon the true construction of the statute of 1841, *c.* 124, § 5, which is as follows : —

" Should it appear to the judge of probate, or master in chancery, that a dissolution of any attachment pursuant to the provisions of the fifth section of the act to which this is in addition, would prevent said attached property from passing to the assignees, the attachment upon his order shall survive, notwithstanding the provisions of said section, and the assignees shall have power, with the permission of the court to which said writ is returnable, to proceed with the suit against the insolvent to final judgment and execution, and the amount recovered, exclusive of costs, shall vest in the assignees."

1. The first objection is, that the assignee should not have taken judgment in his own name. The whole proceeding directed by this statute is certainly anomalous, and not much like the ordinary proceedings at law, because the assignee of the debtor is allowed to step in before the creditor, and to take into his own hands the avails of the property when converted into money. The avowed object is, to preserve the attachment, and thus to secure these avails. But if the law provides for the end, it also warrants the use of the necessary means ; if the assignee may take the proceeds of the attached property, he must first have judgment and execution, and must be permitted to supersede the original creditor in conducting the suit. And as the law declares that the debt shall vest in him, it gives him a legal and not a mere equitable title, and enables him, as in reference to the other assets of the insolvent, consisting of either real or personal property, or choses in action, to act in his own name. This may be attended with inconvenience in some cases, which may be imagined ; but *ita lex scripta est*, and other conflicting provisions of law, and practices in courts, must yield and conform. We think the court were right, in allowing the assignee to take judgment in his own name.

2. It is contended, that if the assignee may recover the debt, he cannot recover the costs, and the language of the clause is relied on that " the amount recovered, exclusive of costs, shall vest in the assignees." We think this conclusion not well warranted. The costs are an incident to the debt, and in the absence of positive law, if the assignee could not recover them, nobody could. But further, when it is said that the amount recovered " exclusive of costs," shall vest in the assignees, the statute looks, we think, to the vesting of this property in the assignee as assets for the use of the creditors, which is the more important purpose of the provision. In regard to the costs, we think the assignee will be accountable for them, according to circumstances. Some part may have been advanced by the original creditor ; or the attorney may have a lien ; or the principal part may have

been advanced by the assignee after his coming in. If the original creditor had made considerable progress in the suit, and disbursed money for fees and incidental expenses, he ought not to suffer. Such creditor would have an equitable claim to reimbursement, and so would the attorney. But we think, in the first instance, the plaintiff must recover the costs; no other person can; and in no other way, as the law stands, can they be made a charge on the attached property, which is the obvious purpose of the statute.

3. Another objection is, that the property was no longer in the hands of the officer, because it had been receipted for, and returned by the receiptor to the debtor.

The answer is, that the officer is estopped by his return to aver that the property is no longer in his hands. The assignee takes the attaching creditor's place, with all his benefits and remedies, and may then avail himself of all securities taken to insure the avails of the attached property, and the benefit of all official liabilities respecting it. The assignee must make out his title strictly; but when he has made it out, then, by force of the statute, he becomes the creditor. New laws require new remedies and new processes, to adapt them to the existing state of things. The property, in contemplation of law, though receipted for, was in the custody of the law; and if the receiptor delivered it up, it was in his own wrong; such delivery could not have bound the original creditor, had no insolvency intervened; and therefore cannot bar this plaintiff.

4. But it is said, that as the names of the parties are not the same in the execution as in the original writ, the officer could not know that it was the same suit, in which he made the attachment. This state of things often occurs, when persons come into a suit in a representative capacity; but the officer has the means of knowledge, from the record; and the practical difficulty is a very slight one.

5. But another consideration is urged, which presents a question of more difficulty; the plaintiff recovers on the right of Twichell, and on his cause of action; and the

execution is served and satisfied by a levy on the attached property. Is such levy a bar to an action to be brought by Twichell, if Houghton should fail of obtaining his certificate? We think it would be no ostensible impediment to proving the claim against the estate of the insolvent; because all the facts would appear to the assignee and to the judge or master. But the question is, whether a future action would lie by the original creditor against Houghton. Perhaps the same answer might be made, in case such a judgment and satisfaction were relied on, as a bar to a future suit, that looking to the whole record, and the law under which the proceedings took place, all the facts would appear, and it would be shown, that by force of the law, the proceeds of the attached property were diverted from the original creditor, and that he had received no satisfaction. This question does not necessarily require a decision in the present case; it is put for the purpose of showing to what consequences the proposed construction would lead. But we think it cannot change what appears to be the express direction of the statute; and if the statute expressly requires this proceeding, as we think it does, other provisions of law must be so construed as to adapt themselves to it.

*Judgment on the facts agreed for the plaintiff.*